503 P.2d 318

Manuel APODACA, Plaintiff-Appellant,

v.

Felix RODRIGUEZ, Defendant-Appellee.

No. 9467.

Supreme Court of New Mexico.

Oct. 20, 1972.

Rehearing Denied Nov. 28, 1972.

Peter B. Shoenfeld, Santa Fe, for appellant.

David L. Norvell, Atty. Gen., Thomas A. Donnelly, Sp. Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

STEPHENSON, Justice.

Petitioner (Apodaca), a penitentiary inmate, petitioned the District Court of Santa Fe County for a writ of habeas corpus or mandamus seeking certain relief against the respondent warden. A writ issued commanding the warden, inter alia, to "show why you should not be required to change your records to show that Petitioner's full sentence will expire on November 8, 1972 rather than May 9, 1973."

The case was heard on December 30, 1971 following which the court made its decision and entered an order quashing and dismissing the writ of mandamus. Apodaca appeals.

In the court below, the case involved a computation of Apodaca's sentence. A complicated problem was before the court arising from successive sentences for different crimes, revocation of a deferred sentence for violation of probation, the taking away of good time and the restoration of portions thereof. On this score, suffice it to say that Apodaca prevailed, the court having in its decision found that his release date was November 7, 1972. That date was determined by deducting from Apodaca's sentence the maximum permissible allowance for good behavior permitted by § 42–1–54, N.M.S.A.1953, and did not take into account that as matters stood at the time

of trial, Apodaca had lost twenty-five days of good time.

Neither party questions the correctness of the trial court's computations. The only thing Apodaca seems to be complaining about here is the trial court's failure to make the writ permanent requiring the warden to enter the release date in the prison records. Petitioner relies upon § 42–1–31.2, N.M.S.A.1953, which provides in part:

"Upon the superintendent's register shall be entered from time to time * * * all alterations affecting the standing or situation of such prisoner, and any subsequent facts or personal history which may be brought officially to his knowledge bearing upon the question of the parole or final release of the prisoner."

That statute does not require the entry of a prisoner's release date on any record. Rather it requires the keeping of records regarding matters which bear upon the question of final release. This is doubtless in recognition of the fact that the day when the gates will swing open is subject to change, which also accounts for the method by which the trial court determined the "release day." For example, good time deductions from a sentence in specified amounts are available to convicts under § 42–1–54, supra. Any such deductions may be forfeited for conduct violations under § 42–1–57, N.M.S.A.1953. This has happened on several occasions in petitioner's case. Forfeited good time may be restored to a convict who is later exemplary in conduct and work performance by the provisions of § 42–1–57.1, N.M.S.A.1953. This has also occurred in petitioner's case. In fact, Apodaca's commendable improvement in these areas has been such that his remaining forfeited good time may well be restored to him. Prisoners can also earn meritorious good time under § 42–1–55, N.M.S.A.1953, in certain circumstances.

Thus the actual release date may, and does, fluctuate under all or any of these statutes as applied to particular fact situations, and how the date is to be specified

**340**

far in advance, is a matter upon which Apodaca sheds no light here.

■ Apodaca thus cannot prevail here because the act sought to be compelled is not one specially enjoined by law upon the warden. § 22–12–4, N.M.S.A.1953; Witt v. Hartman, 82 N.M. 170, 477 P.2d 608 (1970); State ex rel. Sun Co., Inc. v. Vigil, 74 N.M. 766, 398 P.2d 987 (1965). Moreover, he has an area of discretion in the application of the statutes we have mentioned which cannot be controlled, even indirectly, by mandamus. State ex rel. Sun Co., Inc. v. Vigil, supra.

We see nothing wrong with the warden's records. Most of the evidence elicited at trial came from them. No one asserts they are inaccurate. It is true that at trial the parties placed differing legal constructions on this factual material. However, this was threshed out below and no longer is in issue. The warden has not appealed and there is no claim that he is not bound by the trial court's decision. We have no reason to suppose that he will not comply with it, and decline to assume he will not. Thus, Apodaca has suffered no prejudice by the trial court's denial of the writ, nor is prejudice to him presently threatened.

■ This appeal typifies the patently groundless civil proceedings prosecuted by penitentiary inmates which plague the courts and drain the public purse. Our views on the subject are well stated in the following quotation from Bethea v. Crouse, 417 F.2d 504 (10th Cir. 1969):

"We have consistently adhered to the so-called 'hands off' policy in matters of prison administration according to which we have said that the basic responsibility for the control and management of penal institutions, including the discipline, treatment, and care of those confined, lies with the responsible administrative agency and is not subject to judicial review unless exercised in such a manner as to constitute clear abuse or caprice upon the part of prison officials. (Citations omitted.) But being fully cognizant that one does not lose all his constitutional rights when he enters a prison, (citations omitted) we have never turned a deaf ear to a bona fide claim for relief based upon the deprivation of a constitutional right when asserted by a federal or state prisoner, either in the nature of a mandamus or habeas corpus proceeding or, as here, a claim under the Civil Rights Act."

■ If payment of public moneys for attorneys' fees for this appeal is authorized by the Indigent Defense Act (§ 41–22–1 et seq., N.M.S.A.1953) it must be pursuant to § 41–22–3. Although admittedly the proper construction of that statute is in certain circumstances obscure, suffice it to say that we doubt the legislature intended that public moneys should be disbursed to pay attorneys' fees for frivolous civil proceedings by penitentiary inmates. Accordingly, of our own initiative, we direct that no public funds be disbursed for attorney's fees in connection with this appeal.

The action of the trial court is affirmed.

It is so ordered.

McMANUS and MONTOYA, JJ., concur.