**COMMONWEALTH of Kentucky, Appellant,**

v.

**Thomas Lee CRUM, Appellee.**

**No. 2006–CA–001419–MR.**

Court of Appeals of Kentucky.

March 28, 2008.

Brenn O. Combs, Frankfort, KY, for appellant.

Thomas Lee Crum, pro se, West Liberty, KY.

Before ACREE and LAMBERT, Judges; ROSENBLUM,[1] Senior Judge.

## OPINION AND ORDER

ACREE, Judge.

The Commonwealth of Kentucky appeals from a judgment of the Franklin Circuit Court ordering the Commonwealth to compensate Thomas Crum for work performed as an inmate while he was incarcerated in a Florida penitentiary under the Interstate Corrections Compact. KRS 196.610. The Commonwealth argues the circuit court incorrectly interpreted KRS 196.610 and ignored the terms of the contract, entered into pursuant to the statute, between the State of Florida and the Commonwealth of Kentucky. We agree and reverse the judgment of the circuit court.

Crum was convicted of numerous felonies in Nelson and Oldham counties and was sentenced to serve over 405 years in the penitentiary. He was transferred to a Florida facility in April 1992, pursuant to the interstate compact agreement between Florida and Kentucky. This agreement is authorized by KRS 196.610 and the terms are specifically set forth in the "CONTRACT BETWEEN THE STATE OF FLORIDA AND THE STATE [SIC] OF KENTUCKY FOR THE IMPLEMENTATION OF THE INTERSTATE CORRECTIONS COMPACT". In March 2003, Crum filed a petition for a declaration of rights in the Franklin Circuit Court. He challenged the validity of the interstate compact and his transfer to Florida, as well as the fact that Kentucky did not compensate him for work he was required to do as a Florida inmate. The circuit court denied the challenge to the transfer under the compact, but the court's order granted Crum's request to be reimbursed by Kentucky for his inmate labor in Florida. This appeal followed.

■ The Commonwealth raises two arguments on appeal. First, the Commonwealth argues that the circuit court erroneously interpreted KRS 196.610 to require the Commonwealth to reimburse Crum for inmate labor performed while he was in a Florida penitentiary. Next, the Commonwealth asserts, even if the

1. Senior Judge Paul W. Rosenblum sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

circuit court correctly interpreted the statute, the judgment contains an insufficient basis upon which to inform the Commonwealth of the extent of its liability. Crum failed to submit any records of the type or amount of work performed, as well as any compensation received while incarcerated in Florida. Consequently, the circuit court's judgment is mute as to the amount of damages owed by the Commonwealth.

■ When Crum submitted his *pro se* Appellee brief, he included in the appendix extra-judicial records regarding his inmate work in Florida. The entire second half of his brief is supported by these records and, based upon them, he claims the Commonwealth owes him $6,392.00. The Commonwealth responded with a motion to strike the brief for failure to comply with Kentucky Rules of Civil Procedure (CR) 76.12. That motion was passed by the motions panel of this Court for consideration with the merits by this panel. We will dispose of this issue before addressing the circuit court's erroneous statutory interpretation.

CR 76.12(4)(c)(vii) governs the contents of a brief's appendix and contains this prohibition: "Except for matters of which the appellate court may take judicial notice, materials and documents not included in the record shall not be introduced or used as exhibits in support of briefs." CR 76.12(8)(a) permits, but does not require, a brief to be stricken for failure to comply substantially with the rule. We have previously ruled that an appellate court may elect not to consider a portion of a brief as a penalty for failure to comply with CR 76.12. *Pierson v. Coffey*, 706 S.W.2d 409, 413 (Ky.App.1985). In light of Crum's status as a *pro se* litigant, we have elected not to strike his brief in its entirety, but to disregard only that portion of his brief that relies on the extra-judicial materials contained in the appendix. Further, since we have determined that the Commonwealth is not required by KRS 196.610 to reimburse Crum for his inmate work in Florida, the issue of the circuit court's failure to specify the amount of damages is moot.

The circuit court found that the interstate corrections compact, KRS 196.610, required the Commonwealth to compensate Crum for inmate labor he performed in Florida. Article IV(h) of that compact provides:

> Any inmate confined pursuant to the terms of this compact shall have any and all rights to participate in and derive any benefits or incur or be relieved of any obligations or have such obligations modified or his status changed on account of any action or proceeding in which he could have participated if confined in any appropriate institution of the sending state located within such state.

KRS 197.070(1) requires the Department of Corrections to provide employment for all prisoners confined to penitentiaries. KRS 197.110(4) directs the Department to promulgate administrative regulations regarding the amount and manner of payment to prisoners for their labor. The circuit court reasoned that, since Crum would have been employed and paid by the Commonwealth had he been confined to a penitentiary within Kentucky, to allow the Commonwealth to avoid paying him for his work in Florida would be in conflict with the clear language of Article IV(h) of the interstate compact.

The circuit court's reasoning focused solely on Article IV(a) and (h). We have previously discussed the latter section; the former reads as follows:

> (a) Whenever the duly constituted authorities in a state party to this compact, and which has entered into a contract pursuant to article III, shall

decide that confinement in, or transfer of an inmate to, an institution within the territory of another party state is necessary or desirable in order to provide adequate quarters and care or an appropriate program of rehabilitation or treatment, said officials may direct that the confinement be within an institution within the territory of said other party state, the receiving state to act in that regard solely as agent for the sending state.

Based on the phrase "the receiving state to act in that regard solely as agent for the sending state," and the language of section (h), the circuit court concluded that the Commonwealth was responsible for compensating Crum for his inmate employment in Florida. We disagree.

Article III(a)(3) of the interstate compact requires any contract between Kentucky and another state, pursuant to the compact, to specify the terms under which inmates will participate in inmate employment programs. The compact between Kentucky and Florida contains an entire section devoted to inmate training or employment. The relevant portions of Section 14 of the contract read as follows:

### Training or Employment

(a) Offenders from the sending State shall be afforded the opportunity and shall be required to participate in programs of occupational training and industrial or other work on the same basis as offenders of the receiving State. Compensation in connection with any participation (whether as payment, incentive, or for any therapeutic or rehabilitative reason) shall be paid to offenders of the sending State on the same basis as to offenders of the receiving State. Any such offenders of the sending State shall be subject to the regular work discipline imposed upon other offender participants in the particular program. However, nothing contained herein shall be construed to permit or require any offender of a sending State to participate in any training, industrial or work program contrary to the laws of the sending State.

(b) The receiving State shall have the right to dispose of all products produced by an offender, shall retain all proceeds therefrom, **and shall bear all costs of said program.** [emphasis added]

Consequently, according to the terms of the contract, Florida was responsible for any compensation owed to Crum. Further, Crum was not entitled to be paid according to the Kentucky Department of Corrections' regulations governing inmate employment since Section 14(a) of the contract specifies that he would be compensated on the same basis as offenders from the receiving State, in this case, Florida.

The circuit court's order completely ignored Article III of the compact, as well as the language in Section 14 of the contract between the Commonwealth of Kentucky and the State of Florida. Inasmuch as there may be said to be a conflict between KRS 196.610 Article IV(h) and Section 14 of the contract, we turn to the rules governing statutory construction.

We first note that Section 14 derives its authority from KRS 196.610 Article III(a)(3) which requires contracts pursuant to the interstate compact to specify the terms of inmate employment. Thus, we must determine whether Article III(a)(3) trumps Article IV(h) with regard to this issue.

The Kentucky Supreme Court has provided the following guideline to statutory construction:

> When there appears to be a conflict between two statutes, as here, a general rule of statutory construction mandates that the specific provision take precedence over the general. Moreover, it is the Court's duty to harmonize the law so as to give effect to both statutes. Finally, statutes should be construed in such a way that they do not become meaningless or ineffectual.

*Commonwealth v. Phon*, 17 S.W.3d 106, 107–08 (Ky.2000). Article III(a)(3) specifically requires contracts pursuant to the interstate compact to establish the terms for "the disposition or crediting of any payments received by inmates on account" of their participation in inmate employment programs. Thus, its language is specific to the issue of inmate employment. Article IV(h) does not specifically govern inmate employment. Consequently, Article III(a)(3) takes precedence on that issue. Further, the circuit court's construction of Article IV(h), requiring the Commonwealth to treat Crums inmate employment as if it had occurred in Kentucky rather than Florida, robs Article III(a)(3) of its authority to allow contracts between states to govern inmate employment. This is contrary to the principle that "statutes should be construed in such a way that they do not become meaningless[.]" *Phon*, 17 S.W.3d at 108.

Finally, we note that even if Crum receives no compensation for his inmate employment, there is no constitutional violation. "An inmate has no constitutional right to a specific educational or vocational program in prison.... It is well settled that an inmate has no constitutional right to be rehabilitated." *Archer v. Reno*, 877 F.Supp. 372, 377 (E.D.Ky.1995) (citations omitted). Incarceration brings about "di-minished liberties." *Preston v. Ford*, 378 F.Supp. 729, 730 (D.C.Ky.1974). Among the liberties diminished are the rights to "participation in a particular prison job, ... or **payment for work while incarcerated.**" *Id.* (Internal citation omitted; emphasis supplied).

We conclude that the circuit court's failure to consider KRS 196.610 Article III(a)(3) and Section 14 of the contract between the Commonwealth of Kentucky and the State of Florida, led to an erroneous interpretation of KRS 196.610. Since the statute does not require the Commonwealth to compensate Crum for inmate labor he performed while incarcerated in Florida, the judgment of the Franklin Circuit Court is reversed and this case is remanded for entry of an order dismissing Crum's petition for declaration of rights.

Further, the Commonwealth's motion to strike Crum's brief is denied as moot.

ALL CONCUR.